# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL DOBBS,<br>*Plaintiff*,<br><br>v.<br><br>1. UNITED STATES FOREST SERVICE,<br><br>2. NORMAN WAGONER, in his official capacity as Forest Supervisor of the Ouachita National Forest,<br><br>3. TONY TOOKE, in his official capacity as Southern Regional Forester for the United States Forest Service, and<br><br>4. THOMAS TIDWELL, in his official capacity as Chief of the United States Forest Service,<br>*Defendants*, | Case No. CIV-16-112-RAW |

## ORDER

Plaintiff filed his Amended Complaint on April 1, 2016 for injunctive and other appropriate relief under the Administrative Procedures Act, 5 U.S.C. §§ 701, *et seq*. (herein the "APA"). The subject of this appeal under the APA is a Decision Notice issued by the Regional Forester on September 26, 2013 (herein the "Final Decision"). Before the court are the briefs filed by the parties [Docket Nos. 45, 46 and 47]. Plaintiff argues that the Final Decision is arbitrary, capricious, and not supported by substantial evidence. He requests that the court reverse and remand this action with instructions to the Forest Service to grant his requested special use permit to construct a road to his property. Defendants argue that the court should deny Plaintiff's request, maintaining that the Forest Service complied with its required

procedures for making a determination on a special use permit and that the Final Decision is supported by substantial evidence and is not arbitrary or capricious.

**BACKGROUND**[1]

Plaintiff owns a 160-acre tract of land located approximately one-half mile south of the Talimena Scenic Drive and three miles east of Highway 259 in southern LeFlore County. Plaintiff's property is completely surrounded by the Upper Kiamichi Wilderness. Plaintiff desires to build a residence on the tract, but there is no existing road access to the property. The only current access to the property is via remnants of an old foot trail or cross country.

On February 28, 2007, Plaintiff submitted his formal application for a special use permit to construct a gravel road for motorized access to his property. AR at 191. Plaintiff's proposed road would be approximately 5,300 feet long with a 10-12 foot running surface. AR at 12. The total area of soil directly affected by the road construction would be approximately 5 acres. Id. Specifically, 5 acres of soils would no longer be suitable for vegetative production. AR at 36. The average clearing limits would be 40 feet, but due to steep terrain and slopes exceeding 20 percent, the clearing width would extend up to 100 feet. AR at 12-13.

"Construction of the road would require the use of heavy equipment, including one or more bulldozers, dump trucks, and either a 'hammer-hoe' . . . or explosives to dislodge areas of solid sandstone ledge and bedrocks along the proposed route." AR at 19. Building the road would result in an estimated 41.54 tons of sediment the first year. AR at 36. Plaintiff's proposed action would result in a 178% increase over the annual sediment delivered in an undisturbed watershed condition. AR at 37.

---

[1] The court cites to the Administrative Record ("AR") submitted to the court on February 2, 2017. See Docket No. 44.

On November 9, 2008, while his application was pending, Plaintiff attempted to access his property by hiking through a trail. AR at 51, 478. He fell in a dangerous section of the trail, breaking his leg and tearing several ligaments in his ankle. Id. He crawled back to his vehicle and drove to a nearby hospital for treatment. Id.

On June 29, 2012, the Regional Forester issued a "Decision Notice and Finding of No Significant Impact" (herein "First Decision"). AR at 1229-35. Relying on an Environmental Assessment and a Biological Evaluation, the First Decision selected a "no action alternative" and denied Plaintiff's request to construct, maintain and use a permanent road. AR at 1230. Plaintiff was notified of the First Decision by letter dated July 19, 2012. AR at 1241. Plaintiff appealed, and in November of 2012, the Forest Service withdrew the First Decision. AR at 7.

In August 2013, the Forest Service issued an amended Environmental Assessment, adding a non-motorized alternative to be considered for access to Plaintiff's property – "Alternative C." AR at 9-49. On September 26, 2013, the Regional Forester issued the Final Decision. AR at 76-83. Again, relying on the amended Environmental Assessment and the Biological Evaluation, the Regional Forester selected the "no action alternative," denying Plaintiff's request to construct, maintain and use a permanent road. AR at 77.

On January 24, 2014, Plaintiff appealed the Final Decision to the Chief of the Forest Service. AR 108-120. On March 10, 2014, the Appeal Deciding Officer affirmed the Final Decision, exhausting Plaintiff's administrative remedies. AR at 137. On March 30, 2016, Plaintiff filed this action pursuant to the APA, challenging the Final Decision.

### *Access to Private Property within the Wilderness*

The Upper Kiamichi Wilderness was established in 1988 and is located within the Ouachita National Forest. The Upper Kiamichi Wilderness is classified as:

> Semi-Primitive Non-Motorized (SPNM): Area characterized by a predominantly natural or natural appearing environment of 2,500 or more acres. Interaction between users is low, but there is often evidence of other users. The area is managed in such a way that minimum on-site controls and restrictions may be present but are subtle. Motorized use is not permitted. There is a moderately high probability of experiencing isolation from the sights and sounds of humans, independence, closeness to nature, tranquility, and self-reliance through the application of woodsman and outdoor skills in an environment that offers challenge and risks.

AR at 29. Hikers are the largest user group. Id. Hunters also use the wilderness during the fall deer season and the spring turkey season. Id.

The Upper Kiamichi Wilderness and is managed by the Forest Service pursuant to the Wilderness Act of 1964, 16 U.S.C. §1311, *et seq*. (herein "Wilderness Act"). In managing the Upper Kiamichi Wilderness, the Forest Service must also comply with the Alaska National Interest Lands Conservation Act, 16 U.S.C. § 3101-3233 (herein "ANILCA").

The Wilderness Act requires that

> In any case where . . . privately owned land is completely surrounded by national forest lands within areas designated by this chapter as wilderness, such . . . private owner shall be given such rights as may be necessary to assure *adequate access* to such . . . privately owned land . . . or the . . . privately owned land shall be exchanged for federally owned land in the same State of approximately equal value . . . .

16 U.S.C. § 1134(a) (emphasis added). Furthermore, the Forest Service must "permit ingress and egress to such surrounded areas by means which have been or are being customarily enjoyed with respect to other such areas *similarly situated*." 16 U.S.C. § 1134(b) (emphasis added).

ANILCA requires with regard to the *reasonable use* and enjoyment of land within the boundaries of the National Forest System:

4

> Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such *access* to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems *adequate to secure the owner the reasonable use* and enjoyment thereof: *Provided*, That such owner comply with rules and regulation applicable to ingress and egress to or from the National Forest System.

16 U.S.C. § 3210(a) (emphasis added).

The regulations define "access" as "the ability of landowners to have ingress and egress to their lands. It does not include rights-of-ways for power lines or other utilities." 36 C.F.R. § 251.111. "*Adequate access*" is defined as "a route and method of access to non-Federal land that provides for reasonable use and enjoyment of the non-Federal land consistent with *similarly situated* non-Federal land and that minimizes damage or disturbance to National Forest System lands and resources." Id. (emphasis added).

> In issuing a special use-authorization for access to non-Federal lands, the authorized officer shall authorize only those access facilities or modes of access that are needed for the reasonable use and enjoyment of the land that minimize the impacts on the Federal resources. The authorizing officer shall determine what constitutes reasonable use and enjoyment of the lands based on *contemporaneous uses made of similarly situated* lands in the area and any other relevant criteria.

36 C.F.R. § 251.114(a) (emphasis added).

### *The Final Decision*

Noting the applicable law and regulations cited above, for purposes of Plaintiff's application, the Environmental Assessment (herein "EA")[2] defined "*similarly situated*" as "private inholdings within the wilderness on the Ouachita National Forest." AR at 25. The EA

---

[2] As noted above, the Regional Forester relied on the EA and the Biological Evaluation (herein "BE") in issuing the Final Decision. The EA provided a thorough examination of the possible effects of Plaintiff's proposed road and alternatives in accordance with applicable law, including the impact on: cultural resources; wilderness character; scenic quality; soils and water quality; proposed, endangered, threatened and sensitive species; habitat and management indicator species; and terrestrial species. The EA also included the findings from the BE.

defined "similar purposes" as "residential use." Id. The EA noted that: "***No permits have been granted to construct a road within any wilderness inside the Ouachita National Forest***." AR at 26 (emphasis added). One special use permit, the "Morrison permit," allows the land owner to *maintain* a low-development road, but that permit existed prior to the wilderness establishment and "is the sole permit in place affecting wildernesses of the Ouachita National Forest." Id. "A review of National Forests included in the National Wilderness Preservation System found that motorized vehicles were only allowed on roads that existed prior to the area's wilderness designation." Id. The EA determined that granting Plaintiff's application "would be contrary to the agency's customary interpretation and application of the laws and regulations pertaining to *access* and *wilderness* management." AR at 27.

As part of her review, the Regional Forester stated that she carefully considered the following regulations pursuant to the Wilderness Act and ANILCA:

- The use of means of ingress and egress which have been or are being customarily used with respect to similarly situated non-Federal land used for similar purposes. 36 C.F.R. § 251.114(g)(1).

- The combination of routes and modes of travel, including nonmotorized modes, which will cause the least lasting impact on the wilderness but, at the same time, will permit the reasonable use of the non-federally owned land. 36 C.F.R. § 251.114(g)(2).

- The examination of a voluntary acquisition of land or interests in land by exchange, purchase, or donation to modify or eliminate the need to use wilderness areas for access purposes.[3] 36 C.F.R. § 251.114(g)(3).

AR at 78.[4]

---

[3] The Regional Forester notes that both the Forest Service and Plaintiff made a good faith effort to locate properties suitable for exchange and discussed government purchase of the property, but none of the options set forth were satisfactory to both parties. She further noted that nothing is precluding them from renewing efforts to identify a land exchange acceptable to both parties. AR at 78.

[4] The Regional Forester cited to 36 C.F.R. § 215.114(g)(1)-(3), but undoubtedly meant 36 C.F.R. § 251.114(g)(1)-(3).

The Regional Forester stated that she chose the "no action alternative" for the following reasons:

- The historic and traditional access to this inholding is via foot trail or cross country, not via road; there is no evidence that a permanent road ever provided motorized access to the property in question.

- There are several other private inholdings in this and other wilderness areas on the Ouachita National Forest, but none of these wilderness areas had had roads constructed in them since they were designated wilderness.

- Only one inholding is currently served by an authorized (permitted) road within the Upper Kiamichi Wilderness; the permit is for motorized access that existed prior to the designation of this wilderness.

- Construction, maintenance and use of the proposed road (Proposed Action and Alternative B) would result in lasting adverse effects on wilderness character of the Upper Kiamichi Wilderness.

- Implementation of Alternative C (non-motorized trail) would not meet the proponent's expressed desire to have motorized access through the wilderness to his property.

- Non-motorized modes of access will continue to provide Mr. Dobbs adequate access consistent with reasonable use and enjoyment of his property.

- In my judgment, this alternative entails the routes and modes of travel, including non-motorized modes, which will cause the least lasting impact on the wilderness while permitting adequate access to the privately owned land.

AR at 78-79.

The Regional Forester further stated that Plaintiff's proposed gravel road and the alternative of a porous paving surface road were not selected because they did not meet the criterion of minimizing impacts to the wilderness resource while providing adequate access to the landowner. AR at 79. She opined that implementation of these alternatives would violate the Wilderness Act's mandate to preserve wilderness character. AR at 79. The Regional Forester explained that while Alternative C – the non-motorized trail – would have minor impacts on the wilderness character, it was not selected because it would not meet Plaintiff's expressed desire to

7

have motorized access to his property. AR at 79-80. The Regional Forester noted that Plaintiff is not precluded from filing an application for such an alternative. AR at 77.

The Regional Forester also discussed other alternatives considered in the EA but eliminated from detailed study – access by historic routes, access along abutting section lines, and access by new road construction from a southern approach. AR at 18 and 80. The possible historic route was deemed impassable and furthermore, did not ever extend to or provide access to Plaintiff's tract. Id. Access along abutting section lines was eliminated because the terrain is very steep and road construction along those lines would not minimize adverse environmental impacts.[5] Id. An alternate road approaching Plaintiff's property from the south was also eliminated because of very steep terrain which would create a safety issue and user conflicts. Id. Each of these three alternatives were determined by the EA and the Final Decision to not meet the requirements of 36 C.F.R. § 251.114(f)(2), which requires the Regional Forester, prior to issuing any access authorization, to ensure that "[t]he route is so located and constructed as to minimize adverse impacts on soils, fish and wildlife, scenic, cultural, threatened and endangered species, and other values of the Federal land."

**STANDARD OF REVIEW**

When a final agency action[6] is challenged, the reviewing court "shall decide all relevant questions of law, interpret constitutional and statutory provisions,[7] and determine the meaning or

---

[5] The Regional Forester also opined that the "section-line" laws refer to the establishment of public highways and roads, not private roads. AR at 81.
[6] It is undisputed that the September 26, 2013 Decision Notice is the final agency action.
[7] When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the

applicability of the terms of an agency action." 5 U.S.C. § 706. The court must set aside any agency action, finding, or conclusion, if the court finds it is, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance of law." 5 U.S.C. § 706(2).

An agency's action is arbitrary and capricious if the agency:

(1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment.

New Mexico *ex rel*. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 704 (10th Cir. 2009) (citation and internal quotations omitted). An agency's decision is entitled to deference, but the court must "engage in a 'substantial inquiry'" and conduct a "thorough, probing, in-depth review." Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1574 (10th Cir. 1994) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)).

The court "must find and identify substantial evidence to support the agency's action and may affirm agency action, if at all, only on the grounds articulated by the agency itself." Id. at 1580. The court is not to rely "on the *post hoc* rationalizations of counsel," but is to engage in a "substantive review of the record to determine if the agency considered relevant factors or articulated a reasoned basis for its conclusions." Id.

Evidence is substantial if it is "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is one of fact." Id. "'Substantial evidence' is

---

unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984).

more than a mere scintilla; it must be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1581 (citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence . . . or if it constitutes mere conclusion." Id. (citations omitted).

While the court's review must be thorough, "the Forest Service's decision is 'entitled to a presumption of regularity.'" Utah Envtl. Cong. v. Richmond, 483 F.3d 1127, 1134 (10th Cir. 2007) (citing Overton Park, Inc. v. Volpe, 401 U.S. at 415). "This deference is 'especially strong where the challenged decision involves technical or scientific matters within the agency's area of expertise.'" Id. (citation and internal brackets omitted). The court is also to give "great deference to the Forest Service's interpretation of its own regulations," rejecting only those interpretations that are "unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning." Id. (citation omitted). This standard of review is narrow, and the court may not substitute its judgment for that of the agency. Id. (citing Overland Park, 401 U.S. at 416).

**ANALYSIS**

Plaintiff argues the Final Decision is arbitrary and capricious because it applied the wrong standards when it: (1) failed to balance the adequacy of cross-country hiking access with the reasonableness of Plaintiff's use of his property as a residence; (2) disregarded similarly situated properties from its customary and reasonable access determination because roads servicing the properties existed before wilderness designation; and (3) disregarded consideration of access pursuant to Oklahoma section lines that existed before wilderness designation from its customary and reasonable access determination. Plaintiff further argues the decision that the construction, maintenance, and use of the proposed road would result in lasting adverse effects

on the wilderness character of the Upper Kiamichi Wilderness is not supported by substantial evidence.

**I.      Adequate Access**

Plaintiff argues that the Regional Forester's determination was based upon an improper finding of "any access" rather than upon the legal standards that define "adequate access" because the Final Decision: (1) failed to consider the reasonable use of his property, and (2) failed to consider similarly situated properties.

As to the first contention, Plaintiff argues that the Final Decision does not include a discussion of whether a cross-country hiking trail provides adequate access for "reasonable use" of residential property and thus, it made no determination of the "reasonable use" of his property as required by 36 C.F.R. § 114(a). Plaintiff notes that he has sustained significant injuries attempting to access his property by hiking cross-country and argues that such dangers are inadequate access to a residential property. Plaintiff maintains that this case is like Breaker v. United States, 977 F.Supp.2d 921 (D. Minn. 2013), wherein the Forest Service's position was that it only needed to consider the impact on the wilderness at the initial screening stage and so did not make a "reasonable use" determination before denying the plaintiff's request.

As to his second contention, Plaintiff argues that the Regional Forester failed to consider access to similarly situated properties. He notes the Morrison permit and contends that there is no justifiable distinction between owners who purchased before or after the surrounding area was

classified as wilderness. There are also three other inholdings with keys to roads that existed before the area was classified as wilderness.[8]

"Adequate access" is a term of art defined as "a route and method of access to non-Federal land that provides for *reasonable use* and enjoyment of the non-Federal land *consistent with similarly situated* non-Federal land and that minimizes damage or disturbance to National Forest System lands and resources." 36 C.F.R. § 251.111 (emphasis added). The Regional Forester had a duty to determine what constitutes "reasonable use and enjoyment of the lands *based on contemporaneous uses made of similarly situated lands in the area* and any other relevant criteria." 36 C.F.R. § 251.114(a) (emphasis added).

The Regional Forester did not, as Plaintiff argues, decline to make a "reasonable use" determination. In fact, she compared Plaintiff's tract to those "similarly situated," which the EA defined as "private inholdings within the wilderness on the Ouachita National Forest." AR at 25. This definition includes not only all private inholdings in the Upper Kiamichi Wilderness, but in all wildernesses within the Ouachita National Forest. The court finds that the EA's definition of "similarly situated" is not arbitrary or capricious.

The Regional Forester found that there are several other private inholdings in the Upper Kiamichi and other wilderness areas in the Ouachita National Forest, but none have been granted permits to construct a road. AR at 26 and 78. (emphasis added). The EA found only one special use permit, the "Morrison permit," within the Ouachita National Forest. Id. It is for maintenance only and was in place prior to the wilderness designation. The Regional Forester,

---

[8] In his Reply Brief, Plaintiff argues that the Regional Forester should have considered "seventeen properties that have been granted keys to access roads in the Upper Kiamichi Wilderness," citing AR 3826. That page is titled "Record of keys in the Upper Kiamichi Wilderness." It does not show that seventeen properties were granted keys, but that there were seventeen inholdings at the time of wilderness designation. There are currently six holdings, four of which were issued keys to pre-existing roads. Morrison is one of those four.

therefore, determined that non-motorized modes of access would continue to provide Plaintiff with "adequate access" consistent with "reasonable use and enjoyment of the lands ***based on contemporaneous uses made of similarly situated lands in the area***." This determination is not arbitrary or capricious.[9]

Plaintiff argues, however, that the Regional Forester was obligated to determine whether a cross-country hiking trail provides adequate access for the reasonable use of residential property.[10] This argument utilizes the literal or common dictionary definition of the term "adequate" rather than recognizing that "adequate access" here is defined as: "a route and method of access to non-Federal land that provides for reasonable use and enjoyment of the non-Federal land ***consistent with similarly situated*** non-Federal land and that minimizes damage or disturbance to National Forest System lands and resources."

If this court were conducting a *de novo* review, perhaps it would consider a determination of whether a cross-country trail is adequate to serve residential property, as "other relevant criteria" to be considered pursuant to 36 C.F.R. § 251.114(a). Such a determination, however,

---

[9] Plaintiff argues that four of the six known inholdings within the Upper Kiamichi Wilderness have roaded access, which is what he is seeking. The Forest Service determined, however, that no other inholdings have been granted permits to *construct* a road. The roads accessed by the owners of these four inholdings existed prior to wilderness designation. The court takes note of Plaintiff's argument regarding circular reasoning – that no road may be constructed because no road has been constructed. The court, however, is not to substitute its judgment for that of the Forest Service. The Forest Service's determination is supported by more than a scintilla of evidence and is not arbitrary or capricious.

[10] The EA acknowledged Plaintiff's desire to build a residence on the tract and did not contest that as a reasonable use. The EA also considered past and present methods of ingress and egress to this tract as well as to similarly situated non-Federal land. The EA found no evidence that Plaintiff's tract ever had roaded access. AR at 18.

13

would not necessarily change the outcome considering all of the other relevant factors considered in the EA and by the Regional Forester.[11]

This court's review is narrow. It must afford deference to the Forest Service's decision and great deference to its interpretation of its own regulations. The court finds that the Regional Forester applied the correct standards. The Final Decision is not arbitrary or capricious and is supported by substantial evidence.

## II.  Pre-existing Right of Access

Plaintiff argues that the Regional Forester refused "to consider the policy reasons related to section-line access" and that the Final Decision "failed to consider the historical basis for access to Dobb's property." In fact, the EA and the Final Decision did consider section-line access. The EA found that there were no roads or history of roads along the steep terrain of the section-lines of Plaintiff's property. The Regional Forester noted that Plaintiff did not request section-line access in his special use permit application. AR at 80.

Additionally, the Regional Forester determined that the section-line laws are not applicable to Plaintiff's application, as "the Act refers to the establishment of public highways and roads, not private roads." AR at 81. The Act cited by Plaintiff reads:

> That in the Choctaw, Chickasaw, and Seminole nations public highways or roads two rods in width, being one rod on each side of the section line, may be established on all section lines; and all allottees, purchasers, and others shall take title to such land subject to this provision . . . .

---

[11] Such a determination, if given precedence over the other relevant factors, would also result in the reverse of the circular reasoning complained of by Plaintiff, now becoming – because the owner reasonably wishes to use the inholding as a residence, it must have a road. Such a result is not in accord with the applicable laws and regulations.

14

Act of April 26, 1906, ch. 1876, § 24, 34 Stat. 145. The Regional Forester was correct. "The Act of April 26, 1906 is a reservation of the right to open the road for public use. It does not automatically create a public road." Burkhart v. Jacob, 976 P.2d 1046, 1051 (Okla. 1999).

Plaintiff argues, however, that his right to section-line access is "evidence of historical roaded access" to his property. Notwithstanding the existence of any such right, the Regional Forestor found that the "historic and traditional access to this inholding is via foot trail or cross country, not via road; there is no evidence that a permanent road ever provided motorized access to the property in question." AR at 78. This was one of several reasons the Regional Forester denied Plaintiff's application. A right to section-line access does not, as Plaintiff seems to argue, require the Forest Service to grant his application for a special use permit to construct, maintain and use a road to his property.

Again, the court's review is narrow. It must give deference to the Forest Service's decision and great deference to its interpretation of its own regulations. The court finds that the Regional Forester applied the correct standards. The Final Decision is not arbitrary or capricious and is supported by substantial evidence.

### III. The Environmental Assessment

Finally, Plaintiff argues that the Regional Forester's finding that the construction, maintenance and use of the proposed road "would result in lasting adverse effects" on the wilderness character of the Wilderness is unsupported by substantial evidence. He argues that the EA illustrated that the effects on the Wilderness would only be minimal to negligible. To the contrary, construction of Plaintiff's proposed road would render 5 acres of soil unsuitable for vegetation and affect an even larger area due to clearing requirements. It would also result in an

15

estimated 41.54 tons of sediment in the first year, with sedimentation continuing thereafter. Defendants argue, and the court agrees, that Plaintiff focuses on the Forest Service's analysis of six issues and encourages the court to substitute the Forest Service's conclusions with those favored by Plaintiff.

The EA examined seven issues or effects of Plaintiff's proposed action and alternatives. AR 22-46. The issues or effects were: (1) impacts on cultural resources; (2) compliance with legal requirements associated with access to private land and wilderness; (3) impacts on wilderness character; (4) impacts on scenic quality; (5) impacts on soils and water quality; (6) impacts on proposed, endangered, threatened, and sensitive species; and (7) impacts on management indicator species. Id. While the EA found that Plaintiff's proposed action would have minimal or moderate impact in some areas, it found the proposed action would "adversely affect the undeveloped quality of the wilderness character" and "adversely affect the qualities of solitude and primitive and unconfined recreation and not only have long-term, major influence on visitor experiences but also permanently alter these qualities of wilderness character." AR at 32. This was the basis for the Regional Forester's determination that the construction, maintenance and use of the proposed road "would result in lasting adverse effects on wilderness character of the Upper Kiamichi Wilderness." AR at 78.

The Forest Service considered the relevant factors and articulated a reasoned basis for its conclusions. This court is to afford deference to the Forest Service's conclusions and is not to substitute its judgment for that of the Forest Service. The Regional Forester's determination that the construction, maintenance and use of the proposed road "would result in lasting adverse effects" on the wilderness character of the Upper Kiamichi Wilderness is supported by substantial evidence.

**CONCLUSION**

In the Environmental Assessment, the Forest Service conducted a thorough review of the relevant factors. In the Final Decision, the Regional Forester considered the relevant factors and articulated a reasoned basis for her conclusions. The Final Decision is supported by substantial evidence. It is not arbitrary, capricious, or an abuse of discretion. It is in accordance with law. Accordingly, the court finds in favor of Defendants and dismisses this action.

**IT IS SO ORDERED** this 26th day of December, 2017.

*Ronald A. White*
Ronald A. White
United States District Judge
Eastern District of Oklahoma